Thomson, J.
This action was brought by the appellee against the appellant on a claim for goods sold and delivered. The appellee had judgment.
The complaint contained two counts. The first alleged the sale and delivery by the plaintiff to the deféndant of a quantity of wheat at an agreed price of forty-two cents per bushel, the sum total being $214.40. The second averred the sale and delivery of the same wheat, and fixed its value at $214.40. The answer alleged that the wheat was bought by sample; that the sample purported and was represented to be of a grade known in the market as No. 2; that the wheat when purchased was to be shipped by the plaintiff from Creighton, Nebraska, to the town of Hennessey, in Oklahoma Territory, to one M. D. Tait, to whom the defendant had sold it as No. 2 wheat; that the plaintiff so shipped the wheat; that when it arrived at Henessey, Tait refused to receive it because it was not No. 2 wheat, but was of an inferior grade; that it was, in fact, inferior to the sample on which the purchase was made; that the *325 defendant undertook to sell it in Oklahoma, and in Kansas and in Missouri, but because of its inferior quality he was unable to do so, and ordered it sent to Denver, Colorado; and that by reason of freight charges .from Creighton to Hennessey, and from Hennessey to Denver, and by reason of telegraphic and other items of expense, loss of profits, commission on the sale of the wheat in Denver, and the defendant’s labor and trouble in connection with it, there was a balance due him from the plaintiff of $55, for which he demanded judgment. The replication denied that the grade of either the sample or the wheat was No. 2, or that the wheat was inferior to the sample; and denied also the allegations constituting the counterclaim.
It appears from the evidence that prior to the date of the alleged sale of this wheat, the defendant had purchased wheat from the plaintiff, and that after the transaction in question, the defendant continued his purchases from the plaintiff, the subject of the dealings being No. 2 wheat. It also appears that the plaintiff resided in Creighton, Nebraska, and the defendant in Denver, Colorado; that the transactions between them were conducted by correspondence through the mails and by telegraph; and that, except the sale which is the subject of controversy here, their dealings were all settled and closed before the institution of this suit. Both parties testified; but the evidence consisted, for the most part, of letters and telegraphic messages which passed between them. A considerable number of these relate solely to transactions outside of the one to be investigated, and have no bearing upon the question before us. We shall therefore confine ourselves to the evidence from which the facts constituting this particular sale may be deduced.
On the 2d day of September, 1895, the plaintiff *326 wrote and mailed a letter to the defendant, which, after reference to matters connected with the general dealings between the parties, concluded as follows: “I have a small car of wheat, of which I mail you a sample to-day, that is in my way in the elevator. I think this sample is better than the car, although it was taken out of the bin. There is some smut in it. What can you give for'it?”' On the 4th day of the same month the defendant answered this letter, acknowledging its receipt, and referring to the general matters it contained, but saying nothing about the particular wheat on which it asked a bid. On September 6, the plaintiff sent the defendant the following telegram: “Do you cafe consider proposition my letter September second? Have offer from others. Answer.” Receiving no answer to the inquiry, the plaintiff on September 11 wrote and mailed the following letter to the defendant: “I have been selling a little smutty, off-grade wheat in your state to be used for feed. Can you use any of this class of grain? What I sold was pretty black and had some mustard seed in it. Make me a bid on this no-grade wheat if you can use it.” On the following- day, the 12th, the defendant telegraphed the plaintiff as follows: ‘ ‘ Can use wheat like sample forty-two. Answer quick.” To this the plaintiff replied on the same day by wire, saying: “Sell you one car, all I have like sample. How many two wheat can you use; what price?” On the next day, the 13th, the defendant telegraphed the plaintiff as follows : ££ Forty-one one car two wheat, ship Lincoln, care Rock Island.”
In pursuance of instructions from the defendant, the car of wheat in question was consigned to L. Butterfield, Lincoln, Nebraska, care of Chicago, Rock Island & Pacific Railroad. On September 27, the plaintiff telegraphed the defendant as follows: £ £ Car *327 went to Lincoln rejected account smut. Be careful.” On October 1, the plaintiff, in response to this telegram wrote the defendant a letter in which, after recapitulating the correspondence relating to .this wheat, he said: “I had sent you no sample except this of September 2, and supposed you were bidding on it. I now see it was a mistake, but I do not think you can say it was mine. I am very sorry that anything should go wrong.” On October 3, the defendant replied, saying among other things, “You sent me two samples of wheat, one that was good, and the other I could do nothing with, as it was full of smut. ’ ’
The defendant sent the wheat from Lincoln to Oklahoma; and being unable to dispose of it there, had it shipped to Denver, where he sold it for fifty-four cents per bushel.. It is agreed that the words, “Can use wheat like sample forty-two,” in the defendant’s telegram of September 12 conveyed an offer of forty-two cents per bushel.
It is contended for the defendant that the sample mentioned in that telegram, was a sample of No. 2 wheat, and that he never purchased the smutty wheat. Neither party testified as to any samples, and on the question of samples, we have nothing to guide us but the correspondence. From that, an inference is possible that two samples had been sent to the defendant, one of No. 2, and the other of the smutty wheat; although the plaintiff, in his letter of October 1 said he had sent but one. For the purposes of a discussion of the evidence, it may be assumed that two were sent. A supposition may also be entertained that it was not the intention of the defendant to buy this particular wheat, and that he thought the wheat he was buying was of No. 2 grade. The theory advanced by the defendant is that his telegram of the 13th was his answer to the plaintiff’s letter of the 11th; and that his telegram of the 12th referred to *328 the sample of No. 2 wheat, which it is assumed was sent with the plaintiff’s letter of the 2d, and not the sample of smutty wheat which accompanied the same letter. On this hypothesis the defendant never authorized* the plaintiff to ship the smutty wheat. However, this is only a theory, constructed from the correspondence to serve the purposes of the argument; for the testimony is silent on the subject. But the theory seems to us to be faulty. Between the 2d and the 11th, there was considerable correspondence between the parties, of which the general contents of the plaintiff’s letter of the 2d was the subject, but the question concerning the smutty wheat remained unnoticed by the defendant. On the 11th, the plaintiff by letter again, and explicitly, called the defendant’s attention to this wheat; not only describing it as smutty, but as off-grade or no-grade wheat. The sole subject of the letter was the smutty wheat. No other wheat was referred to, and the defendant was asked if he could use that wheat, and on the 12th he said he could use wheat like sample. If his telegram of the 12th was not his response to that letter, and if the sample referred to was not the sample of smutty wheat which he had received, we are unable to assign the telegram a place in the correspondence. It fits nowhere else. But if the defendant thought its language could be understood as referring to No. 2 wheat, the plaintiff’s reply sent him by wire on the same day, ought to have undeceived him. That reply notified him of the sale to him of one car — all that the plaintiff had like the sample — and then asked him how many cars of No. 2 wheat he could use, and at what price. Wé think the defendant’s telegram of the 13th was intended as an answer to the plaintiff’s inquiry in his message of the 12th, and not to that contained in the letter of the 11th. It did *329 not answer the letter at all; bnt it did fully and explicitly answer the telegram.
The defendant was advised by the plaintiff’s letter of the 2d that the latter had only one car of the inferior wheat; and a sample of that wheat went with the letter. Outside of the letter, the defendant ought to have inferred from the language of the telegram itself that the wheat which the plaintiff had sold him was not No. 2 wheat; because it advised him that the plaintiff had no more wheat like that sold, but still proposed to sell him No. 2 wheat. It would seem that an inquiry why the plaintiff desired to sell No. 2 wheat, if he had already sold all he had, would naturally have suggested itself to the defendant. But, by referring back to the letter of the 2d, he would have found that the plaintiff, while ready at all times to furnish No. 2 wheat, had only one car of smutty wheat like the sample sent, and it should have occurred to the defendant that the wheat sold, being one car, and all the plaintiff had like the sample, was that identical lot of wheat. This wheat was not shipped for some days after the sale, because the plaintiff was unable to obtain means of transportation from the railroad; and the order could easily have been countermanded and the mistake corrected, without loss or inconvenience to any one. But the defendant said nothing, and suffered the plaintiff to proceed on the supposition that he had sold the wheat; and not until it had gone to Oklahoma and been rejected, did the defendant raise any question concerning it.
Now if the plaintiff was mistaken with reference to the wheat he bought, the mistake was the result of his own gross negligence. The plaintiff had done nothing to mislead him. On the contrary, the plaintiff’s language when speaking of the wheat, was clear and explicit. To misconstrue it would require *330 some ingenuity. That the plaintiff supposed he was selling the smutty wheat, and that the defendant ought to have known that he so supposed, seems entirely clear to us; and if the defendant, either knowingly or negligently, suffered him to act upon a supposition which he had the right to entertain, and so change his position to his own disadvantage, the result is the same as if the transaction had been the deliberate and intentional act of both parties. We think there was a sale of the wheat, and that the defendant should pay to the plaintiff the agreed price.
The judgment will be affirmed.

Affirmed.